UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AYOBAMIDELE AKINYODE,**<br><br>Plaintiff,<br><br>v.<br><br>**UNITED STATES DEPARTMENT OF HOMELAND SECURITY, et al.,**<br><br>Defendants. | Civil Action No. 21-110 (JDB) |

## MEMORANDUM OPINION

Plaintiff Ayobamidele Akinyode filed this action against the U.S. Department of Homeland Security ("DHS"), U.S. Citizenship and Immigration Services ("USCIS"), and some high-ranking DHS officials for failing to adjudicate his immigration petition for over four years. See Compl. [ECF No. 1] ¶¶ 9–10, 20–23, 27–28. Defendants have moved to transfer the case to the District of New Jersey, where Akinyode resides and the assigned USCIS Field Office is located, or, alternatively, to dismiss the case for failure to state a claim and improper venue. See Defs.' Mot. to Transfer or Dismiss & Mem. in Supp. Thereof ("Mot. to Transfer") [ECF No. 4] at 6. For the reasons discussed below, the Court will grant defendants' motion to transfer and deny without prejudice defendants' motion to dismiss.

### Background

Akinyode, a citizen of Nigeria, is married to Charann Caulker, a citizen of the United States. Compl. ¶¶ 1–2. The couple resides in East Orange, New Jersey. Id. ¶ 3. On or about May 25, 2017, the couple filed an I-130 Petition for Alien Relative and an I-485 Application for Adjustment of Status on behalf of Akinyode at the USCIS Field Office in Newark, New Jersey.

1

Id. ¶¶ 4, 16.  The Field Office conducted the fingerprinting, photographing, and interviews required for Akinyode's application on September 18, 2019.  See id. ¶¶ 5–6.  But nearly two years later, USCIS has not yet adjudicated his application, despite repeated requests by Akinyode and his wife.  See id. ¶¶ 7–10.

In his complaint, filed on January 13, 2021, Akinyode names as defendants DHS, USCIS, DHS Secretary Alejandro Mayorkas, USCIS Director Tracy Renaud, and Paulo Correia, Director of the Newark USCIS Field Office,[1] alleging that these individuals, in their official capacities, were responsible for overseeing the agencies' failure to adjudicate his application as required by law.  See id. ¶¶ 12–16.  In particular, Akinyode claims that defendants' inaction has violated the Administrative Procedure Act ("APA"), the Immigration and Nationality Act ("INA"), and his constitutional due process rights.  See id. ¶¶ 9–10, 20–23, 27–28.  Akinyode alleges that all defendants except for Correia reside in the District of Columbia.  See Pl.'s Opp'n to Defs.' Mot. to Transfer & Dismiss ("Pl.'s Opp'n") [ECF No. 6] at 6–8.  But defendants contend that USCIS and Director Renaud have recently relocated to Camp Springs, Maryland.  See Mot. to Transfer at 1–2.

On March 11, 2021, defendants filed a motion to transfer venue, asserting that the case lacks any ties to this District and that the District of New Jersey is a more appropriate and convenient forum for this dispute.  At the same time, defendants moved to dismiss the case for failure to state a claim and improper venue.  Akinyode opposes both motions.  The motions have been fully briefed and are now ripe for consideration.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), if a public officer named as a party to an action in his official capacity ceases to hold office, the Court will automatically substitute that officer's successor.  See Fed. R. Civ. P. 25(d).  Hence, the Court substitutes DHS Secretary Alejandro Mayorkas for Chad Wolf, and USCIS Director Tracy Renaud for Kenneth Cuccinelli.

**Legal Standard**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer" a civil action to any other district where it "might have been brought." 28 U.S.C. § 1404(a). The Court has "broad discretion to decide" whether transfer is appropriate, Ravulapalli v. Napolitano, 773 F. Supp. 2d 41, 55 (D.D.C. 2011) (citing SEC v. Savoy Indus. Inc., 587 F.2d 1149, 1154 (D.C. Cir. 1978)), based on an "individualized, case-by-case" assessment of the interests involved, id. (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)). The moving party has the burden of establishing that transfer is warranted under § 1404(a). Aracely, R. v. Nielsen, 319 F. Supp. 3d 110, 127 (D.D.C. 2018) (citing Montgomery v. STG Int'l, Inc., 532 F. Supp. 2d 29, 32 (D.D.C. 2008)).

To carry that burden, the movant must first demonstrate that the case "might have been brought" in the transferee district. Ctr. for Env't. Sci., Accuracy & Reliability v. Nat'l Park Serv., 75 F. Supp. 3d 353, 356 (D.D.C. 2014). Then, the movant must show that "considerations of convenience and the interest of justice weigh in favor of transfer to that court." Sierra Club v. Flowers, 276 F. Supp. 2d 62, 65 (D.D.C. 2003). The Court "'balance[s] a number of case-specific factors,' related to both the public and private interests at stake" when making its assessment. Douglas v. Chariots for Hire, 918 F. Supp. 2d 24, 31 (D.D.C. 2013) (quoting Stewart Org. v. Ricoh Corp., 487 U.S. 22, 29 (1988)).

**Analysis**

Defendants seek to transfer this case to the District of New Jersey, where Akinyode resides and where the responsible USCIS Field Office is located. Mot. to Transfer at 3. Defendants do not dispute that there is a statutory basis for venue in this District because at least one defendant resides here. Id. at 2–3. But according to defendants, Akinyode's complaint has "no meaningful

3

connection to the District of Columbia" and Akinyode has improperly attempted to "manufacture venue" here simply by naming high-ranking federal officials. Id. at 2 (quoting Cameron v. Thornburgh, 983 F.2d 253, 256 (D.C. Cir. 1993)). Akinyode counters that his claims arose in the District of Columbia, where most of the named defendants reside and carry out their duties to implement the INA. Pl.'s Opp'n at 5–8. The Court concludes that although venue lies in both this District and the District of New Jersey, the public and private interests at stake support transferring this case to New Jersey.

### A. Venue in New Jersey

Akinyode does not argue that venue would be improper in New Jersey, only that he prefers to litigate his case in this District, and that he opposes defendants' rationale for transfer. "A civil action in which a defendant is an officer or employee of the United States" may "be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1). Given these parameters, Akinyode could have filed in the District of New Jersey, where he and defendant Correia reside and where the USCIS Field Office that has failed to adjudicate his petition is located. See Compl. ¶ 3; Mot. to Transfer at 3. Hence, venue in New Jersey is proper, and the Court will now evaluate whether transfer is appropriate.

### B. Private Interest Factors

When assessing a motion to transfer venue under § 1404(a), the Court considers the following private interest factors: "(1) the plaintiffs' choice of forum; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof." Aguilar v. Michael

4

& Sons Servs., Inc., 292 F. Supp. 3d 5, 11 (D.D.C. 2017) (citing Trout Unlimited v. U.S. Dep't of Agric., 944 F. Supp. 13, 16 (D.D.C. 1996)). While not all factors favor the same outcome, on balance, they support transfer in this case.

In weighing the first factor, courts typically defer heavily to plaintiffs' choice of forum, as Akinyode emphasizes. See Pl.'s Opp'n at 5; see also Shawnee Tribe v. United States, 298 F. Supp. 2d 21, 24 (D.D.C. 2002) ("[A] plaintiff's choice of forum is afforded great deference, and is a paramount consideration in any determination of a motion to transfer." (quotation omitted)). However, deference is not appropriate "where the plaintiff's choice of forum has no meaningful ties to the controversy," and defendant seeks transfer to a venue to "which plaintiffs have substantial ties and where the subject matter of the lawsuit is connected." Trout Unlimited, 944 F. Supp. at 17. In particular, when "the forum preferred by plaintiff is not his home forum," and the forum that defendant desires is the plaintiff's home forum, "there is little reason to defer to the plaintiff's preference." Aishat v. U.S. Dep't of Homeland Sec., 288 F. Supp. 3d 261, 268 (D.D.C. 2018) (citing Reiffin v. Microsoft Corp., 104 F. Supp. 2d 48, 52 (D.D.C 2000)); see also Oudes v. Block, 516 F. Supp. 13, 14 (D.D.C. 1981) (finding that transferring case to plaintiff's home forum would cause him "negligible or non-existent" inconvenience). Here, the Court will not defer to Akinyode's choice of forum because Akinyode resides in New Jersey, defendants' preferred forum. See Compl. ¶ 3; see also Aishat, 288 F. Supp. 3d at 268. This factor, then, does not weigh heavily in the Court's analysis.

Unlike plaintiff's choice of forum, defendants' choice of forum is typically not granted deference unless defendants can demonstrate the "added convenience and justice of litigating" in the transferee forum. Aishat, 288 F. Supp. 3d at 269 (citing In re Vitamins Antitrust Litig., 263 F. Supp. 2d 67, 69 (D.D.C. 2003)). As discussed below, defendants have shown that the District of

5

New Jersey is more convenient for the parties and has a meaningful factual connection to the challenged action, which this District lacks. Hence, the Court affords some deference to defendants' preference to litigate this case in New Jersey.

The crux of the parties' dispute concerns the third factor: where plaintiff's claims arose. When considering this factor in APA cases, courts look to "where the decisionmaking process occurred." Ngonga v. Sessions, 318 F. Supp. 3d 270, 275 (D.D.C. 2018) (quoting Nat'l Ass'n of Home Builders v. EPA, 675 F. Supp. 2d 173, 179 (D.D.C. 2009)). Defendants assert that the events at issue were the province of the Newark Field Office, and therefore Akinyode's claimed injury arose in New Jersey from alleged errors by USCIS staff. Mot. to Transfer at 6–7; see also Defs.' Reply in Supp. of Mot. to Transfer & Dismiss ("Defs.' Reply") [ECF No. 7] at 6. Akinyode disagrees, contending that the responsible "decisionmakers" at "both USCIS and DHS"—namely, DHS Secretary Mayorkas and USCIS Director Renaud—"reside in this District," not New Jersey. Pl.'s Opp'n at 6.

Defendants have the better of this dispute. This case turns on processing decisions—or decisionmaking failures—by USCIS Field Office personnel in Newark. In fact, Akinyode fails to allege that the heads of either DHS or USCIS were personally involved in adjudicating his application, beyond the fact that their responsibilities broadly include implementing the INA. Compl. ¶¶ 14–15 (describing defendants Mayorkas and Renaud as "responsible for the implementation of the [INA], and for ensuring compliance with applicable federal law"); see also id. ¶ 23 ("The combined delay and failure to act . . . is attributable to the failure of [d]efendants to adhere to their legal duty to avoid unreasonable delays under the INA."). "[C]ourts in this circuit have repeatedly found venue to be improper when the named agency official was not 'personally involved' in the challenged decision." MVP Sports v. Cissna, No. 19-cv-0742 (KBJ), 2020 WL

6

5816239, at *2 (D.D.C. Sept. 30, 2020) (quoting Aftab v. Gonzalez, 597 F. Supp. 2d 76, 81 (D.D.C. 2009)); see also Abusadeh v. Chertoff, No. 06-cv-2014, 2007 WL 2111036, at *6–7 (D.D.C. July 23, 2007). A delay in processing is not indicative of the involvement of high-level officials in evaluating a specific immigration application, and Akinyode cites no authority otherwise.[2]

Of course, "venue may lie in the District of Columbia when the plaintiff 'assert[s] a general, broad-based challenge to immigration policies or regulations.'" See MVP Sports, 2020 WL 5816239, at *2. But Akinyode's claim does not allege that any specific policy or directive from agency officials in Washington caused the delay in adjudicating his application. See Ike v. USCIS, No. 20-cv-1744 (CRC), 2020 WL 7360214, at *3 (D.D.C. Dec. 15, 2020) (denying transfer where "[p]laintiffs' claims focus primarily on the policies issued from USCIS headquarters that apply to all USCIS field offices") (citation omitted).[3] Instead, Akinyode's complaint "focuses solely on [his] application . . . and simply asks that this Court require [d]efendants to immediately finish adjudicating [that] application." See Abusadeh, 2007 WL 2111036, at *6 (transferring venue to the local USCIS Field Office under such circumstances); see also Al-Ahmed v. Chertoff, 564 F. Supp. 2d 16, 19 (finding "little, if any, of the activity giving rise to plaintiff's claims [to compel action on a visa application] has occurred in the District of Columbia" because "decisions [on the application] will be made at the local USCIS office in Virginia"). Hence, the Court concludes that Akinyode's claims arose in the District of New Jersey, which counsels in favor of transfer.

---

[2] Defendants further assert that even if the USCIS Director had been personally involved in the controversy, this case would lack ties to this District because USCIS recently relocated to Camp Springs, Maryland. See Mot. to Transfer at 1–2. While Akinyode doubts the veracity of defendants' statements about USCIS's relocation, Pl.'s Opp'n at 8, this factual disagreement has little bearing on the Court's analysis. Indeed, the Court does not accept Akinyode's premise that where the majority of the named defendants resides necessarily controls the venue analysis. See MVP Sports, 2020 WL 5816239, at *2 (citing Cameron, 983 F.2d at 256). At the same time, USCIS's supposed relocation does not meaningfully advance defendants' case either since they are not seeking a transfer to the District of Maryland.

[3] In some cases, other judges in this District have even deemed allegations involving specific national policies insufficient to "anchor venue here." Montgomery v. Barr, 502 F. Supp. 3d 165, 177–78 (D.D.C. 2020) (quoting Aftab, 597 F. Supp. 2d at 81).

7

The Court will consider the remaining private interest factors—convenience of the parties and witnesses and ease of access to sources of proof—together. Of particular importance, Akinyode has not identified any detriment to himself should the case be transferred to the District of New Jersey. Indeed, it seems more convenient for Akinyode to adjudicate his dispute in his home forum of New Jersey than in this District. See Mot. to Transfer at 7. The convenience of witnesses, in turn, is only relevant "to the extent that witnesses may actually be unavailable for trial in one of the fora," and no such showing has been made here. See Bederson v. United States, 756 F. Supp. 2d 38, 49 (D.D.C. 2010) (quoting Mohammadi v. Scharfen, 609 F. Supp. 2d 14, 18 (D.D.C. 2009)). But, in any event, witness availability issues seem least likely to arise in New Jersey because the Field Office personnel adjudicating Akinyode's application live and are employed there, as do Akinyode and his wife. See Mot. to Transfer at 8; see also Pasem v. USCIS, No. 20-cv-344 (CRC), 2020 WL 2514749 at *4 (D.D.C. May 15, 2020) ("The USCIS personnel who best know the individual causes of any delays in processing times will also be available at those centers . . . tip[ping] the scales in favor of transfer."). The same convenience rationale applies to any additional sources of proof that are relevant to Akinyode's case. Of course, because this matter arises under the APA, Akinyode's claims will most likely be resolved based on the administrative record without the need for discovery or testimony. See Gulf Restoration Network v. Jewell, 87 F. Supp. 3d 303, 315 (D.D.C. 2015) (finding these private interest factors typically have little bearing in APA cases). These convenience factors, therefore, weigh in favor of transfer but are not tremendously informative to the Court.

C.   **Public Interest Factors**

After evaluating the private interest factors, the Court must assess several public interest factors, including (1) the transferee court's familiarity with the governing laws and the pendency

8

of any related actions; (2) the relative congestion of calendars in each court; and (3) the local interest in resolving the controversy. Aguilar, 292 F. Supp. 3d at 11 (citing Trout Unlimited, 944 F. Supp. at 16).

The first factor is neutral. The parties have not identified any related actions in either venue, and while Akinyode challenges that the New Jersey district court has no "edge" over this Court, Pl.'s Opp'n at 6, the converse is also true. Akinyode's claims "arise under federal laws, which '[a]ll district courts are presumed to be equally adept at applying.'" See Rossville Convenience & Gas, Inc. v. Barr, 453 F. Supp. 3d 380, 388 (D.D.C. 2020) (quoting Sheffer v. Novartis Pharms. Corp., 873 F. Supp. 2d 371, 379 (D.D.C. 2012)); see also In re Korean Air Lines Disaster of Sept. 1, 1983, 829 F.2d 1171, 1175 (D.C. Cir. 1987). "That principle applies even to federal administrative law cases, despite the relative concentration of such cases in [the District of Columbia]." Ike, 2020 WL 7360214, at *3.

Defendants assert that the second factor, congestion of each district, is also neutral or otherwise of little consequence. See Mot. to Transfer at 10. This factor can be difficult to assess, because judicial "statistics provide, at best, only a rough measure of the relative congestion of the dockets" and "do not, for example, reflect the differences in the caseloads carried by different individual judges." United States v. H&R Block, Inc., 789 F. Supp. 2d 74, 84 (D.D.C. 2011); see also Wolfram Alpha LLC v. Cuccinelli, 490 F. Supp. 3d 324, 336–37 (D.D.C. 2020). Many judges in this District consider the median time from filing to disposition as a rough estimate of congestion. See, e.g., Ike, 2020 WL 7360214, at *4; Wolfram Alpha, 490 F. Supp. 3d at 336. The majority of immigration applications in federal courts are resolved before trial, with only 0.7 percent proceeding to trial. See Table C-4, U.S. District Courts – Civil Statistical Tables for the Federal Judiciary (Dec. 31, 2020), https://www.uscourts.gov/statistics/table/c-4/statistical-tables-

federal-judiciary/2020/12/31.  In the District of Columbia, the median time from filing to disposition for civil cases that are resolved before trial is 5.1 months, compared to 10.1 months in the District of New Jersey.  See U.S. District Court – National Judicial Caseload Profile (March 31, 2021), https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2021/03/31-1.  This factor, then, weighs slightly against transfer to the District of New Jersey.

Finally, the Court assesses the local interest in resolving this controversy by considering "where the challenged decision was made; whether the decision directly affected the citizens of the transferee state; the location of the controversy[;] . . . whether the controversy has some national significance; and whether there was personal involvement by a District of Columbia official."  Bourdon v. U.S. Dep't of Homeland Sec., 235 F. Supp. 3d 298, 308 (D.D.C. 2017) (quoting Otay Mesa Prop. L.P. v. U.S. Dep't of Interior, 584 F. Supp. 2d 122, 126 (D.D.C. 2008)).  Akinyode's only argument with respect to this factor is that the key "decisionmakers" in charge of his application reside in the District of Columbia.  Pl.'s Opp'n at 6.  The Court has already rejected that theory.  The controversy in question arose from the adjudication of Akinyode's petition to adjust his immigration status at the New Jersey Field Office, and directly affects only Akinyode and his spouse, both residents of New Jersey.  Cf. Al-Ahmed, 564 F. Supp. 2d at 20 (acknowledging the "local interest in resolving local disputes at home" where plaintiff lived in the Eastern District of Virginia and all decisions regarding plaintiff's immigration application were made there); Aishat, 288 F. Supp. 3d at 271 (recounting that many courts have found that the "district in which the relevant USCIS Field Office is located is 'better positioned' to be involved in 'dictating the priorities of a local USCIS office' and 'may have a superior interest in doing so'") (quoting Chauhan v. Napolitano, 746 F. Supp. 2d 99, 105 (D.D.C. 2010)).  While complaints under

federal immigration law may have national implications on a broad scale, Akinyode does not allege that the delay in USCIS's processing has any ramifications beyond his own case or significance for other individuals seeking immigration benefits. This factor, therefore, also supports transfer because New Jersey has a stronger local interest in resolving this dispute.

\* \* \*

In sum, the Court concludes that, on balance, the public and private interests at stake counsel in favor of transferring this case to the District of New Jersey. While some of the factors are neutral or even weigh against transfer, defendants have sufficiently demonstrated that this case is better suited to be heard in New Jersey, where the controversy arose, and where Akinyode will experience the effects of its adjudication. Other judges in this District have routinely granted motions to transfer where both plaintiff and the responsible USCIS Field Office are located in the transferee forum. Akinyode makes little attempt to distinguish his circumstances or explain why that approach should not be followed in this case. Hence, because defendants have shown that transfer to New Jersey is warranted, the Court will grant their motion.

## Conclusion

For the reasons explained above, the Court will transfer this case to the District of New Jersey. Although defendants have also moved, in the alternative, to dismiss Akinyode's complaint for failure to state a claim and improper venue, Mot. to Transfer at 1, the Court need not reach the merits of that motion and will instead deny the motion without prejudice, as defendants request, see id. at 11. A separate Order will issue on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: July 16, 2021